UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA,<br>　　　　　　　　　　　Plaintiff,<br>v.<br>KENT STEVEN DOUB,<br>　　　　　　　　　　　Defendant. | Case No. 3:23-cr-0651-GPC<br><br>**ORDER DENYING MOTION TO SUPPRESS EVIDENCE**<br><br>**[ECF No. 161]** |

## I.　　INTRODUCTION

Defendant Kevin Steven Doub ("Defendant") was charged with possession of child sexual abuse material (CSAM). He moved to suppress a 2024 "subsequent search" of his computers and media which occurred nearly four years after the execution of a search warrant of computers and media. ECF No. 161 ("Motion to Suppress"). The Government responded. ECF No. 167. Defendant submitted a reply. ECF No. 169. The Government filed a sur-reply. ECF No. 176. Oral arguments were presented on December 18, 2024, ECF No. 180, and on January 17, 2025, ECF No. 182, at which time the Court orally denied the motion to suppress subsequent search. This written order provides further analysis as to the basis for its ruling.

1   At issue are the searches of Defendant's computer and digital evidence on
2   September 16 and October 1, 2024, which occurred after the original authorization period
3   in the warrant expired but after this Court authorized reexamination of the seized items
4   on December 4, 2023.  ECF No. 80.

5   Defendant argues that these searches were warrantless, or in the alternative, that
6   even if these searches were authorized, that the Government failed to conduct the
7   searches within the parameters of this Court's authorizing order.  As such, Defendant
8   argues that all evidence from the subsequent searches must be suppressed.  Furthermore,
9   Defendant argues that the subsequent search independently violated Federal Rule of
10  Criminal Procedure Rule 41 – another reason to suppress this evidence.

11  The Government argues that a new search warrant was not required, that the
12  further review followed the terms and requirements of the original search warrant, that
13  Rule 41 was not violated, and that at the end of the day, the good-faith exception applies
14  because the Government and its officials acted reasonably and in accordance with district
15  custom and practice.

16  **II.   FACTUAL BACKGROUND**

17  Since 2011, law enforcement officers have investigated child pornography
18  trafficking by users of "Freenet", an internet-based, peer-to-peer (P2P) network that
19  allows users to anonymously share files and access websites within the network. ECF No.
20  161-1 ¶¶ 5, 18.  In 2018, law enforcement officers conducted a child pornography
21  investigation of a Freenet user who attempted to download child pornography over IP
22  addresses using Freenet software.  *Id*. ¶¶ 25-34. Thereafter, administrative subpoenas
23  were directed to Cox Communications for subscriber information relating to these IP
24  addresses.  *Id*.  ¶¶ 24, 37.  The produced records identified Defendant Kent Doub as an
25  account holder for the IP addresses. *Id.* at ¶¶ 37-43.  Law enforcement officers then

1  identified Mr. Doub's home as the location where the IP addresses were used. *Id*. ¶¶ 37-
2  41.
3     On October 6, 2020, the Government sought and obtained a search warrant for Mr.
4  Doub's home and computers, cellular telephones, and storage devices in the home.
5  Search Warrant, Case No. 20MJ4361, ECF No. 2. The affidavit in support of the warrant
6  reported that offsite imaging would occur within 45 days and that electronic storage
7  devices will be retained as instrumentalities and would not be returned to the owner.
8  Affidavit in Support of Search Warrant, ECF No. 161-1 at ¶ 46(b). Because analyzing
9  electronic storage devices is very challenging and time-consuming due to the quantity of
10 data on the storage devices, the affidavit in support of application for search warrant
11 stated that with the approval of the Court in signing the warrant the "personnel
12 conducting the identification and extraction of data will complete the analysis within one-
13 hundred twenty (120) days from the date of seizure pursuant to this warrant, absent
14 further application to this court." *Id*. at ¶ 46(h).
15     On October 9, 2020, thirty-seven items seized during the search were submitted to
16 an FBI forensic lab for analysis. Forensic Examiner Taylor Armstead (Examiner) drafted
17 a Report of his examination of the materials. ECF No. 166-2, Exhibit B (May 18, 2021
18 Report of Examination). Among the items "forensically imaged and examined" were two
19 multi-terabyte hard drives examined for "artifacts related to sexual exploitation of a
20 minor to include: images, videos, web history, documents and deleted files." *Id*. at 2.
21 Examination resulted in the identification of a number of graphics and videos with
22 content indicative of child sexual exploitation. *Id*. at 3. The Examiner noted the presence
23 of "Frost-Next", a Freenet auxiliary program, with artifacts which revealed multiple
24 message boards with language consistent with child sexual exploitation. *Id*. The Report
25 indicated that Frost-Next utilizes a proprietary configuration format which made it
26 difficult to examine within forensic software. A Results Disc was produced and

contained two reports and folders that hold forensic artifacts located during examination to include web history, local folder access, dominion + control items and other items. *Id*.

On November 20, 2020, the Government applied for a 180-day extension of time to complete examination of digital evidence. The motion was granted and required the examination to be "completed by May 21, 2021, absent further order from the Court." Case No. 20MJ4361, ECF No. 7.

On November 27, 2023, the Government filed a motion seeking "authorization to access computer and digital evidence in preparation for trial." ECF No. 77. The Government requested

> an order from the Court authorizing reexamination of the computer and digital evidence and cellular devices in preparation for trial. The United States seeks authority to search for additional evidence within the scope of the original search warrant, including evidence of dominion and control over the seized devices. Authorization is sought at this time in order to avoid undue delay in preparation for trial. Authorization is sought through the date of trial.

*Id*. at 16-17.

While Mr. Doub did not file a written response to the motion for reexamination, at the December 4, 2023 hearing, he orally objected on grounds related to the original search warrant, and not the reauthorization and subsequent search issues raised herein. This Court granted the motion to reexamine on December 4, 2023. ECF No. 80.

On August 7, 2024, one of the forensic examiners assigned to the case resigned from the FBI.[1] The United States had been preparing for that examiner to testify as to his

---

[1] While there is disagreement between defense and the Government over who was the primary examiner for Device 181799, *see Sur-Reply* at 2, this does not affect the Court's analysis.

4

23-cr-0651-GPC

findings. Due to that resignation, Forensic Examiner Tim Hamon was assigned to examine device 181799 in anticipation of testifying at trial, and according to the Government, Hamon proceeded "under the authority granted by this Court's December 4, 2023 order." ECF No. 167 at 2.

On September 16, 2024, the case agent and prosecutors made an internal service request for a further forensic examination of items that were submitted to the Regional Computer Forensics Laboratory (RCFL) on October 9, 2020. ECF No. 161, Ex. C (October 10, 2024 Report of Examination). The items included the multi-terabyte hard drives. *Id*. The Report states, "The examiner assigned to those cases had separated from the FBI and the US Attorney's office sought answers to questions related [to] the digital evidence." *Id*. The request sought "files, artifacts, and insight" related to the following:

    1. Files identified and exported during the initial examination, especially:

        a. The pictures depicting potential child sexual abuse material (CSAM)

    2. The origin or sourcing of any such CSAM

    3. Attribution of the CSAM, in terms of acquisition, consumption, or distribution"

*Id*. The Report then goes on to state that on **October 1, 2024**, the AUSAs "also requested additional clarification and detail about content that was included [in] the original A-O2 request, including:

    4. Language and terms used in CSAM

    5. Artifacts that tend to demonstrate the consumption of CSAM

    6. Examination of tools and techniques related to data destruction and obfuscation"

On September 16, 2024, as requested by the AUSA and case agent, Forensic Examiner Tim Hamon reexamined the previously seized computers and media. Exhibit C (October 10, 2024 Report of Examination). The requested examination yielded results which are set out in the report. *Id.* at 3-4.

5

23-cr-0651-GPC

1  Defendant states that Hamon examined items that were previously examined by
2  Armstead, but that Hamon found "substantially more evidence than Mr. Armstead."
3  Motion to Suppress at 4. In its opposition, the Government states that Hamon "found
4  <u>additional</u> incriminating evidence on Defendant's computer... [including], but is not
5  limited to, message boards or channels with names like 'pedomom' and 'girlporn' that
6  were on Defendant's computer…" Opposition at 2 (emphasis added). The Defense asserts
7  that the government "conducted a second independent search of electronic devices and
8  recovered new images." Reply at 3.  The Government, in its Sur-Reply, clarifies that:
9  "Mr. Hamon's review <u>did not lead to the discovery of additional contraband images or</u>
10 <u>video</u>… [his] review, as documented in his report, merely focused on what Mr. Hamon
11 noted to be digital forensic artifacts related to the contraband previously found on the
12 already seized device." Sur-Reply at 2 (emphasis added).

### III.   DISCUSSION

#### A. Fourth Amendment's search warrant requirement

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, and effects, against unreasonable searches and seizures." "[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.' " *United States v. Ross*, 456 U.S. 798, 825 (1982) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Defendant argues that the searches on September 16 and October 1 of 2024 violated his Fourth Amendment rights because the warrant (from October 6, 2020) was expired at the time the computer and media were reexamined. Defendant argues that it does not matter that the search involved seized digital data versus a person's home, and that the Government's view of the Fourth Amendment would allow law enforcement to

1 | continue to return to a home to conduct a search without applying for a new warrant.
2 | Defendant argues that the November 27, 2023 application to the Court to "revive the
3 | original warrant" did not cure the Fourth Amendment violation. Motion to Suppress at 6.
4 | "The government failed to explain why probable cause remained to conduct the
5 | examination. Nor was the pleading supported by oath or affirmation." *Id*. Defendant
6 | argues that "an authorization from a district court does not comply with the Fourth
7 | Amendment's requirement for a warrant." *Id*.

8 | According to the Government, the United States did not need a new warrant or new
9 | probable cause to review what it already legally possessed pursuant to a warrant. ECF
10 | No. 167 at 3 (Opposition). Additionally, the Government argues that Fourth Amendment
11 | concerns are not implicated here where the Government was granted authority by a
12 | neutral, independent arbiter; where the review here was limited to "one forensic image
13 | previously made from a digital media source found in Defendant's possession" which
14 | could not be returned to Defendant anyways because child pornography is contraband;
15 | and where the search is unlike "repeated, intrusive, and warrantless searches of a person's
16 | home." *Id*. Instead, the Government argues that this is akin to "investigators reviewing
17 | photocopies made of responsive documents found in just one of many file cabinets
18 | searched pursuant to a warrant. Those investigators would normally be permitted to
19 | review those photocopies ad nauseum…" Sur-Reply at 2.

20 | There is no dispute that files containing CSAM were identified and exported
21 | during the initial analysis of the mirror imaged hard drives. Further, it appears that the
22 | internal service request to reexamine the hard drives sought "files, artifacts, and insight"
23 | related to such "[f]iles identified and exported during the initial examination." In
24 | analyzing the motion, it is necessary to determine whether the reexamination constituted
25 | a new Fourth Amendment event, in whole or in part.

1    In *United States v. Johnson*, 93 F.4th 605 (2d Cir. 2024), the Second Circuit
2 addressed a similar Fourth Amendment issue.  There, the National Center for Missing
3 and Exploited Children (NCMEC) reviewed CSAM digital material that was responsive
4 to the original search warrant and that had already been segregated from the other digital
5 information.[2]  NCMEC's review led to the identification of additional evidence that
6 implicated Johnson in a different crime (the *production* of CSAM). 93 F.4th 605. The
7 Second Circuit found that criminal investigators often "reexamine evidence that has
8 lawfully been seized pursuant to a warrant" and these "investigative steps" don't usually
9 "constitute[e] a new Fourth Amendment event." *Id*. at 613. It acknowledged that there
10 were more concerns with digital material, since electronic data could contain a larger
11 trove of information, much of which could be irrelevant to the criminal investigation that
12 led to the seizure. *Id*. "That said, the general principle that law enforcement can
13 reexamine lawfully seized material during the course of an investigation without
14 engaging in a new search has clear application in a case like this, where stored data
15 responsive to a search warrant has been separated out from nonresponsive data, and
16 investigators return to reexamine only the responsive material in pursuit of law
17 enforcement ends." *Id.* Further, as to the segregated seized materials, defendant would
18 not have any reasonable expectation of privacy in the contraband that was seized,
19 identified and segregated. *See Katz v. United States*, 389 U.S. 347 (1967).

    Here, applying *Johnson*, the question is whether the evidence that Defendant seeks
to suppress was identified, seized, and separated at the time that the search warrant was
executed without engaging in a new search.  The Government asserts that Mr. Hamon
focused on "digital forensic artifacts related to the contraband previously found on the

---

[2] Homeland Security investigators had submitted 3,761 images and 3,653 video files to NCMEC after removing various duplicate CSAM files.

8

23-cr-0651-GPC

already seized device." Sur-Reply at 2.  This aligns with the request for "files, artifacts, and insight" related to files "identified and exported during the initial examination."  ECF No. 166-3, Ex. C (October 10, 2024 Report of Examination). However, the Government acknowledges locating additional incriminating evidence during the reexamination in the form of "message boards or channels with names like 'pedomom' and 'girlporn' that were on Defendant's computer" Opposition at 2. The record is unclear whether digital forensic artifacts related to the contraband were intertwined with the identified contraband and was extracted and segregated from the hard drive at the time of the initial analysis.  To the extent that the Government's reexamination went beyond the segregated data and materials, it requires analysis under Fourth Amendment and Rule 41.

**B. Federal Rule of Criminal Procedure 41(e)(2)(A)(i)**

Rule 41(e)(2)(A)(i) requires the officer requesting a search warrant to "execute the warrant within a specified time no longer than 14 days."  Meanwhile, Rule 41(e)(2)(B) provides, with respect to a warrant seeking Electronically Stored Information (ESI), "[t]he time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the *seizure or on-site copying of the media* or information, and not to any later off-site copying or review" (emphasis added).  Fed. R. Crim. P. 41 was amended in 2009 with advisory committee notes to the amendments clarifying that Rule 41(e)(2) was intended to broaden the scope of digital searches given the large amounts of information in ESI:

> Computers and other electronic storage media commonly contain such large amounts of information that it is impractical for law enforcement to review all of the information during execution of the warrant at the search location. *This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant*.
>
> ...

9

23-cr-0651-GPC

> In addition to addressing the two-step process inherent in searches for electronically stored information, the Rule limits the 10 [14] ... day execution period to the actual execution of the warrant and the on-site activity. While <u>consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all</u>" presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs.

Fed. R. Crim. P. 41(e)(2)(B), 2009 Advisory Committee Notes (emphasis added).

Here, the affidavit in support of the search warrant requested that "personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days from the date of seizure…absent further application to this court." ECF No. 166-1, Exhibit A at ¶ 46(h). Following the October 8, 2020 seizure of the subject hard drive, a mirror image of the hard drive was made to permit off-site review of the ESI. On November 20, 2020, Special Agent Daniel Evans asked for an extension of time to continue the forensic review given the encryption encountered and the significant amount of time and resources required to perform the analysis. 20MJ4361, ECF No. 6 at 3. The November 20, 2020 order directed that the review be completed "by May 21, 2021, absent further order from the Court." Ultimately, the Government's actions in executing the warrant and conducting the initial review complied with Rule 41. *See United States v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013) ("[U]nder [Rule] 41(e)(2)(B), a warrant for electronically stored information is executed when the information is seized or copied—here, when the [government] seized the phone.

Law enforcement is permitted to decode or otherwise analyze data on a seized device at a later time.").

Left to decide is whether the September/October 2024 reexamination was likewise permitted under the Fourth Amendment and Rule 41 by the enabling language in the November 20, 2020 order which limited forensic analysis through May 21, 2021 "absent further order from the Court." As a starting point, neither Rule 41 nor the Fourth Amendment facially impose time limitations on the government's forensic examination of evidence seized. *United States v. Triumph Cap. Grp., Inc*., 211 F.R.D. 31, 66 (D. Conn. 2002). As recognized in the amendment notes to the 2009 amendment, a "substantial amount of time can be involved in the forensic imaging and review of information" due to the "sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs." Fed. R. Crim. P. 41(e)(2)(B), 2009 Advisory Committee Notes. Because of the complexities involved in identifying and extracting ESI, Rule 41 does not provide a "one size fits all" time period or an outer limit for completing the review. *Id*.

Instead, under both the Fourth Amendment and Rule 41, cases analyzing the time period from execution of search warrant to completion of the ESI review have applied a reasonableness standard. *Triumph Cap. Grp, Inc.,* 211 F.R.D. at 66; *accord United States v. Graziano*, 558 F. Supp. 2d 304, 316 (E.D.N.Y. 2008 ("[T]he manner of the execution of the warrant" in computer searches is "subject to judicial review under a 'reasonableness' standard."); *United States v. Metter*, 860 F. Supp. 2d 205, 214 (E.D.N.Y. 2012). In *Triumph Cap. Grp,* the search warrant authorized an off-site search of the hard drive that could take weeks or months. 211 F.R.D. at 66. The court concluded that as long as the time taken was reasonable under the circumstances, the search of a mirror imaged hard drive was not in violation of the Fourth Amendment. 211 F.R.D. at 66.

1  In reviewing delays in conducting forensic reviews, courts "have previously
2  determined that delays of 10 months, or more, in reviewing electronic data are not per se
3  unreasonable, even when the government does not furnish a basis for the delay in
4  searching electronic data." *United States v. Estime*, No. 19-CR-711 (NSR), 2020 WL
5  6075554, at *14 (S.D.N.Y. Oct. 14, 2020) (citing cases); *United States v. Brown*, 627 F.
6  Supp. 3d 206, 232 (E.D.N.Y. 2022); *United States v. Sosa*, 379 F. Supp. 3d 217
7  (S.D.N.Y. 2019) (search taking 15 months to complete nearly three months before trial
8  and weeks after plea negotiations broke down was within bounds of reason); *see also*
9  *Nelson v. State*, 863 S.E.2d 61 (Ga. 2021) (delay of more than two years between seizure
10 of device and examination date did not violate the Fourth Amendment); *United States v.*
11 *Ganias,* 755 F.3d 125, 136 (2d Cir. 2014) (while Rule 41 prescribes no particular time
12 period for data extraction, the time needed to complete off-site copying or review is
13 subject to the rule of reasonableness).

In applying the reasonableness standard to the December 2023 reauthorization, the Court must consider (1) whether probable cause existed at the time of the reauthorization, (2) the justification for the reexamination, and (3) the terms of the authorization. The Court finds that probable cause existed to reexamine the computers and media and that adequate grounds to reexamine were provided. However, the Court concludes that the open-ended authorization was insufficiently specific to be reasonable and comply with Rule 41 or the Fourth Amendment.

**1. Probable Cause**

The Government argues that probable cause remained, unchanged by the passage of time. The devices have been in the custody of law enforcement since their seizure from Defendant's residence and the contents have remained unchanged. It cites to *United States v. Brewer*, 588 F.3d 1165 (8th Cir. 2009), where the Court concluded that the delay between the warrant's issuance and its execution had "no effect on the probable cause

determination. The computer media at issue here were electronically-stored files in custody of law enforcement." 588 F.3d at 1173.

The Defense argues that "the mere fact that the government retains physical custody over the devices is not a justification for conducting subsequent searches of the contents of the devices absent a new search warrant based on probable cause." Reply at 3.

The Court agrees that probable cause remained unchanged as of November 2023 because "the evidence was frozen in time" when the mirror image was seized in 2020. *See Triumph Cap. Grp., Inc.*, 211 F.R.D. at 66 (ESI was "frozen in time" when a mirror image of a hard drive was made so that there was no danger that probable cause ceased to exist). There is no suggestion that the mirror imaged hard drive had been improperly stored or tampered with by anyone. The Court finds that probable cause to reexamine the mirror imaged hard drive existed at the time of the reexamination because there was no likelihood that the sought-after evidence was no longer on the hard drive. *See Commonwealth v. Knoble*, 188 A.3d 1199 (Pa. 2018) (probable cause existed after nine months following seizure of phone where no one could alter its contents and secured phone was in police custody during the entire relevant period). The finding as to this factor supports the reasonableness of the reexamination. *See United States v. Bedford,* 519 F.2d 650, 655–56 (3d Cir. 1975) (noting that the reasonableness of a search is also determined by whether probable cause had dissipated at the time the warrant was executed).

**2. Reasons for Reexamination**

In this case, the Government began its child pornography investigation in 2018, a search warrant was obtained in October 2020, the analysis and extraction of the hard drive occurred through May 2021, and charges were filed on March 14, 2023. ECF No. 1. On November 27, 2023, the Government sought authorization for reexamination,

asserting that plea negotiations had broken down and that the case was headed to trial. ECF No. 77.

While the reexamination request was made nearly three years after the seizure, as noted above, probable cause remained to believe that the mirror image would contain evidence of child pornography possession and distribution. Here, on November 27, 2023, the Government applied to reexamine the hard drive for ESI "in preparation for trial." ECF No. 77 at 16-17. The Government sought authority to search "for additional evidence within the scope of the original search warrant, including evidence of dominion and control over the seized devices." *Id.* As to the timing of the request, the motion stated that "[a]uthorization is sought at this time in order to avoid undue delay in preparation for trial" and was "sought through the date of trial." *Id.*

Because the Government was preparing for trial, it sought "additional evidence including dominion and control", *id.*, which would account for the fact that "[i]t is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created…" Affidavit in Support of Search Warrant ¶ 46(f). The Court finds that there was good cause to reexamine and that granting authorization to reexamine as of November 27, 2023 was reasonable. [3]

### 3. Authorization to Reexamine until Date of Trial

The remaining factor asks whether the time period of reexamination violated Rule 41 or was reasonable. The Government's application sought authorization through the "date of trial." However, at the time the motion was made, a trial date had not been set

---

[3] The Government partially supports its reexamination of the hard drive based upon the assignment of Mr. Hamon after the original examiner resigned from the FBI. ECF No. 167 at 2, ECF 176, Exhibit A. However, such justification was not relied upon by the Court at the time it authorized the reexamination in December 2023 and is not salient in the Court's analysis under Rule 41 or the Fourth Amendment.

and was not scheduled until March 18, 2024, when it was set for July 23, 2024. Ultimately, the reexamination did not occur until September/October 2024, and trial is currently scheduled for May 31, 2025.

Defendant argues that even if the Court could lawfully reinstate an expired warrant, the September and October 2024 searches were not within the scope of the original warrant. Defendant argues that if the authorization was valid until the start of trial, then the order would authorize searches "in perpetuity" (because at the time the Motion was filed, there was no trial date set), making this an unacceptable "general warrant." Motion to Suppress at 7.

According to the Government, other courts in the district have authorized reexamination and access to devices in preparation for trial in CSAM cases. It's unclear how "very common" this practice is in this District, but the Government provides some examples. *See* Opposition at 4. But not all judges agree with the Government. In *United States v. Buckner*, 17-cr-1150-BTM, Judge Moskowitz expressed concerns that reexamination could violate the Fourth Amendment: "The computer is analogous to the office… You can't obtain the entire cabinet. You have to obtain the files related to the warrant and specify, and it seems to me a computer is an electronic version of the file cabinet, and if you want to search it again, you need a warrant." ECF No. 77 at 30-31. The Government later withdrew their request for re-examination. While the computer files may be analogous to an office file cabinet, here, the government made a copy of the hard drive and Rule 41 permits a later review of the contents of the hard drive.

Whether other judges have granted or denied orders in other cases ignores the fact that every application for extending the time to review is content-specific. Moreover, the Government motion in this case and the cases cited are light on legal or factual analysis as to why reexamination is appropriate under Rule 41 or the Fourth Amendment so that

the courts that had approved or denied the motions were not asked to engage in full analysis of the Fourth Amendment and Rule 41 issues that are present.

While neither the Fourth Amendment or Rule 41 impose any specific time limits on the review of computers or digital media, they do impose a reasonableness requirement in providing authorization. An open-ended authorization to the "date of trial" is not reasonable because it does not account for the passage of time that occurred after the trial date in this case was set and continued on a number of occasions which could affect the reasonableness of reexamination. Therefore, the Court concludes the open-ended time frame violated Rule 41 and the Fourth Amendment.

However, even if the lack of a specific time period was unreasonable, suppression is not an appropriate remedy unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule. *United States v. Pangburn,* 983 F.2d 449, 455 (2d Cir. 1993) (quoting *United States v. Burke,* 517 F.2d 377, 386–87 (2d Cir. 1975)).

Here, there was no prejudice to Mr. Doub because the Court finds it had the authority to extend the reexamination period all the way to October 2024. Mr. Doub was not entitled to have the hard drive returned. Given the fact given that probable cause to reexamine was unaffected by the passage of time and the grounds for reexamination were reasonable, the Court would have likely granted a further request to extend the time for reexamination through October 2024. Further, there is no evidence of deliberate disregard of the rule. As such, suppression for a Rule 41 violation is not warranted.

**C. Good-faith exception**

Suppression for a Fourth Amendment violation is also not warranted. "[I]n *United States v. Leon*, the Supreme Court set out an exception to the exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search warrant."

16

23-cr-0651-GPC

*United States v. Crews*, 502 F.3d 1130, 1135–36 (9th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897, 925 (1984)). The exclusionary rule is designed to deter police misconduct rather than legal errors of judges and magistrates. *See Illinois v. Krull,* 480 U.S. 340, 349–52 (1987).

Under the good-faith exception, if officers conduct a search pursuant to a search warrant that is later invalidated, they still satisfy the Fourth Amendment so long as they acted in "objectively reasonable reliance" on that warrant. *United States v. Barnes*, 895 F.3d 1194, 1201 (9th Cir. 2018). When it invokes the exception, the government bears the burden of proving that officers relied on the search warrant "in an objectively reasonable manner." *Crews*, 502 F.3d at 1136.

The Supreme Court has recognized "four situations that per se fail to satisfy the good faith exception." *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013) (discussing *United States v. Leon*, 468 U.S. 897 (1984)). The four situations are: (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge wholly abandons his or her judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence utterly unreasonable; and (4) where the warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Id*. In each of these situations, an officer "will have no reasonable grounds for believing that the warrant was properly issued." *Id.*

Defendant relies on the fourth situation and argues that the good-faith exception is not applicable because the Court's authorization for a subsequent search was expired on its face. *See United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) ("To permit the total deficiency of the warrant… to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly

17

23-cr-0651-GPC

erode the protections of the fourth amendment.")  Defendant submits that since more than 120 days lapsed between the December 4, 2023 authorizing order and the subsequent search in September/October 2024, no reasonable law enforcement officer would believe that the warrant was valid at the time of the subsequent search.

In the present case, the original warrant was not facially deficient in failing to particularize the place to be searched or the things to be seized. The original warrant satisfied the Fourth Amendment as to its form and content.[4] The warrant, and its accompanying affidavit, clearly identified what items could be seized and authorized an application to extend the time to reexamine ESI that was seized at the time the warrant was executed. As discussed above, there was probable cause to search the mirror imaged hard drive in 2024 because the evidence was "frozen in time."

As to the time frame to reexamine the mirror image hard drive, the authorization granted permission to search through the date of trial, which had not been set as of November 2023 due to pending motions. In the event the failure to provide a specific time period for reexamination constituted a Fourth Amendment violation, the violation was occasioned by the Court's erroneous order. The good-faith exception is applied when a judicial officer erroneously issues a warrant, but the officers involved are not expected to recognize the mistake. "If the executing officers act in good faith and in reasonable reliance upon a search warrant, evidence which is seized under a facially valid warrant which is later held invalid may be admissible." *United States v. Michaelian,* 803 F.2d 1042, 1047 (9th Cir. 1986) (providing examples of good-faith exceptions).  Here, relying

---

[4] In his Citation to Supplemental Authority, Defendant introduces a challenge of the original search warrant based upon the alleged lack of temporal requirements in the categories of data sought. ECF No. 193 at 3. Federal Rule of Appellate Procedure 28(j) does not authorize a party to introduce in a Citation to Supplemental Authority an entirely new argument that has not been previously made.

upon the court order granting the authority to reexamine, it was reasonable for Mr. Hamon to believe he had authorization to reexamine "through the date of trial." Consequently, to the extent that there was a Fourth Amendment violation, the Court concludes the reexamination was conducted in good faith reliance upon an objectively reasonable court order.

## CONCLUSION

Based on the foregoing reasons, the Court DENIES Defendant's Motion to Suppress Subsequent Search of Computers and Media.

**IT IS SO ORDERED.**

Dated: April 25, 2025

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge